UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FOSS MARITIME COMPANY, LLC, a Washington limited liability company; and NORTHWEST TUG LEASING, LLC, a Washington limited liability company<br><br>Plaintiffs,<br><br>v.<br><br>NAVIGATORS INSURANCE COMPANY, a New York insurance company; ZURICH AMERICAN INSURANCE COMPANY, an Illinois insurance company; and ASCOT INSURANCE COMPANY, a New York insurance company,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**Introduction and Nature of Dispute**

Plaintiffs Foss Maritime Company, LLC and Northwest Tug Leasing, LLC bring this action against three of their insurers, Navigators Insurance Company, Zurich American Insurance Company, and Ascot Insurance Company (together, "Navigators") to recover policy benefits that Navigators wrongfully denied as well as

COMPLAINT - 1

**Miller Nash LLP**
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

actual damages that plaintiffs sustained as a direct and proximate result of that wrongful denial.

After four tugs suffered injury and damage to their propulsion systems and surrounding structures, plaintiffs gave notice of a claim for indemnification of covered losses to Navigators.

During the roughly four and a half years that have elapsed since then, Navigators performed no discernable investigation and provided no coverage position regarding its duty to indemnify plaintiffs. These actions and inactions breached the policy and Navigators' duties to plaintiffs under Washington law.

## Parties

1. Plaintiff Foss Maritime Company, LLC ("Foss") is a Washington limited liability company with its principal place of business in Seattle, Washington.

2. Plaintiff Northwest Tug Leasing, LLC is a Washington limited liability company with its principal place of business in Seattle, Washington.

3. Defendant Navigators Insurance Company is a New York corporation with its principal place of business in New York.

4. Zurich American Insurance is an Illinois corporation with its principal place of business in Illinois.

5. Defendant Ascot Insurance Company is a New York corporation with its principal place of business in New York.

## Jurisdiction and Venue

6. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1367(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and there is diversity of citizenship between plaintiffs, two Washington limited liability companies, whose sole member is

COMPLAINT - 2

incorporated in Washington, and defendants, entities that are organized under the laws of New York and Illinois.

7. The Court has general personal jurisdiction over the defendants because they conduct significant business in the State of Washington and / or committed acts that gave rise to this litigation in this district.

8. The Court also has specific personal jurisdiction over the defendants under Washington's Long Arm Statute, RCW 4.28.185, and the due process clauses of the United States and State of Washington constitutions, in that the defendants, individually or acting through their apparent agents: (A) transacted business in Washington (RCW 4.28.185.(a)), and (B) committed, and/or conspired to commit, a tortious act within Washington (RCW 4.28.185(b)).

9. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because each defendant's contacts with this district are sufficient to subject it to personal jurisdiction here; and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, including the delivery and breach of the insurance policies at issue in this matter.

**Facts**

**I.   Plaintiffs purchased hull and machinery insurance coverage from Navigators.**

10. From at least 2018 and continuing through 2024, Plaintiffs and other of their affiliates purchased a series of one-year insurance policies, herein the "Policies," that offered a "Marine Hull / Liability Package," to which Navigators Insurance Company subscribed as the lead underwriter.

11. Four of these Policies are pertinent to this action. The first was in effect from March 1, 2020 through March 2021, the second from March 1, 2021 until March 1, 2022, the third from March 1, 2022 until March 1, 2023, and the

fourth from March 1, 2023 until March 1, 2024. Plaintiffs paid premiums in exchange for each of these Policies. Plaintiffs are each a "named Assured" under these Policies.

12. Each Policy offers Hull and Machinery insurance. In exchange for a premium, this insurance contains two clauses that extend coverage to a variety of losses beyond traditional "coverage for Adventures and perils" associated with maritime operations. These losses include "latent defects," "negligence, incompetence or error of judgment . . . of any person," and "other causes of whatsoever nature."

13. The first clause expanding coverage is Section 7, entitled "Additional Perils," covers "cost of repairs or loss of or damage to Subject Matter of this insurance . . . caused through negligence, incompetence or error of judgment . . . of any person whatsoever" or "through latent defect . . . or from other causes of whatsoever nature arising either on shore or otherwise, howsoever causing loss of or injury to the property hereby insured."

14. The second clause is Section 21, entitled "Liner Negligence Clause," which covers:

    A. Breakdown of motor generators or other electrical machinery and electrical connections thereto, bursting of boilers, breakage of shafts, or any latent defect in the machinery or hull;

    B. Loss or damage to the subject matter insured directly caused by

        1) Accidents on shipboard or elsewhere, other than breakdown of or accidents in nuclear installments or reactors on board the insured vessel;

       2)     Negligence, error of judgment or incompetence of any person;

excluding under both "A" and "B" above only the cost of repairing, replacing or renewing any part condemned solely as a result of a latent defect, wear and tear, gradual deterioration or fault or error in design or construction.

provided such loss or damage (either as described in said "A" or "B" or both) has not resulted from want of due diligence by the Assured(s), the Owner(s) or Manager(s) of the vessel.

15. Together, Sections 7 and 21 of the Policies cover the loss, damages, and cost of repairs of a vessel and its machinery and hull due to latent defects, negligence, incompetence or error of judgment, and "other causes of whatsoever nature."

## II. Plaintiffs contracted for the design and construction of four tugs employing azimuth stern drives.

16. Plaintiffs contracted with a shipyard in Washington doing business as Nichols Brothers Boat Builders ("Nichols") to design and build four tugs employing azimuth stern drives that were designed and manufactured by Kongsberg Maritime Finland Oy and Kongsberg Gruppen ASA (collectively referred to herein as "Kongsberg"). The contract was entered on October 26, 2018 and the tugs were built at Nichols's shipyard in Washington state over the course of the next two-plus years.

17. An ASD propulsion system consists of thrusters that can rotate in any direction, giving vessels equipped with them greater power and maneuverability than comparable vessels using a traditional propeller and rudder. Below is a schematic from the specifications for the tugs that illustrates the propulsion system:



18. ASD propulsion units are capable of generating enormous thrust, which in turn places a great deal of torque on their internal components and the structural framing that attaches each drive to the vessel's hull. It was essential, therefore, that the Nichols shipyard design and build the tugs with thrusters and installation frameworks capable of withstanding the forces generated during tug operations.

### III. The tugs were improperly designed and built, with defects resulting in continuing damage to their thrusters and hull.

19. The tugs were delivered to plaintiffs between April 2020 and June 2021 and each tug entered service soon after its delivery. Once the tugs were in service, the internal components of the thrusters began to destroy themselves, including their slewing bearings, slewing rings, and O-rings. The installation frameworks also experienced high stress levels, causing fatigue damage in the connections between each thruster and the hull. This has required frequent and

ongoing repairs to address the continuing and continually worsening damage to each tug. Since delivery of the tugs between April 2020 and June 2021, plaintiffs have incurred over $2.5 million in costs to repair that damage.

20. Plaintiffs have paid these significant costs with their own funds, with no contribution from Navigators to date. Navigators has been aware of the scope of these expenses for over a year. For example, in October 2024, Navigators received copies of survey reports that summarized the $2,434,576 in repair costs that had been incurred as of then. These reports each identified a number of records, including invoices and spreadsheets, which substantiated these repair costs. Navigators did not follow up to request those records until over a year later, in the weeks leading up to the filing of this action.

21. While repairs to date have kept the tugs operational and safe, they have been insufficient to completely repair the underlying problems and end the continuing damage to each tug. Consequently, each time a tug has returned to service after undergoing repairs, the damage to the tug has resumed.

22. During the course of these repairs, plaintiffs brought these problems to Nichols's and Kongsberg's attention but neither of them offered any proposal that would permanently repair the tugs.

23. Plaintiffs ultimately were forced to engage, once again at their own expense, independent marine engineers and naval architects to investigate the root causes of the damage that the tugs have been suffering since each entered service. It was the experts retained by Plaintiffs, not Nichols or Kongsberg, who ultimately determined the root causes.

24. The principal root cause was Nichols's installation of a different thruster than what was required under the tug construction contract specifications,

without adjusting its design and construction of the installation framework and vessel hull to accommodate the change.

25. The contract specifications required installation of a double-bearing thruster, while the thruster that Nichols installed had only one bearing. The design of the installation framework and vessel hull based on the double-bearing model included a single connection between the thruster and hull, with additional stabilization provided by the second bearing in the specified double-bearing thruster.

26. Nichols's installation of the single-bearing thruster in a framework designed for the double-bearing thruster led to greatly increased stress and strain on the lone connection between the thruster and hull as well as the internal components of the thrusters themselves. The increased stress generated by the single-bearing thruster combined with an installation framework and vessel hull that were not designed and built with this added force in mind resulted in (a) excessive deflection, meaning the thruster moves laterally and in a detrimental manner from its original location as the vessel moves through the water, and (b) structural overload and fatigue failures at the thruster-hull attachment points.

27. Compounding Nichols's failure to design and build installation frameworks with thrusters that were sufficient to withstand the stresses they would experience was the fact that the thrusters themselves had latent design defects.

28. To hold Nichols and Kongsberg accountable for their contractual commitments to deliver tugs and thrusters free of defects, plaintiffs commenced separate arbitrations against them in March 2024 and June 2024, respectively.

29. As of the date this complaint was filed, those proceedings remain pending and unresolved. Plaintiffs have incurred substantial legal fees and related

Miller Nash LLP
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

costs in connection with those proceedings. By virtue of its potential subrogation rights, Navigators stands to benefit from any recovery obtained from Nichols or Kongsberg.

### IV. In the nearly 5 years since plaintiffs first presented a claim for coverage of the tugs' damage to Navigators, Navigators has not provided a coverage position, accepted coverage, or paid any of plaintiffs' losses.

30. The improper design, installation, and construction of the thrusters and installation frameworks constitute covered "latent defects" under the Policies. Further, these errors constitute covered "negligence, incompetence or error of judgment . . . of any person," as well as covered damage due to "other causes of whatsoever nature." These errors were the root causes of the damage to each of the tugs. No exclusion bars coverage for the damage to each of the tugs due to these errors.

31. On January 25, 2021, almost five years ago, plaintiffs notified Navigators of the damage to three of the tugs and sought coverage of associated losses under the Policies. On July 28, 2022, over three years ago, plaintiffs did the same for the fourth tug. Navigators acknowledged receipt of these notices but took no steps to pay any of the steadily climbing repair costs that accrued both before and after plaintiffs notified Navigators.

32. In late 2024, plaintiffs advised Navigators regarding the status of their arbitrations against Nichols and Kongsberg. Plaintiffs outlined three commitments that plaintiffs needed from Navigators to potentially reach a settlement with Nichols and Kongsberg. In addition, around this same time, Navigators received the previously mentioned survey reports for each of the tugs. Since then, plaintiffs have provided updated summaries of their past repair costs, which now total $2,501,835.60.

33. As of March 4, 2025, Navigators still had neither accepted nor rejected plaintiffs' claim for coverage, nor had it offered any substantive or written explanation of its coverage position.

34. On May 20, 2025, plaintiffs' counsel wrote to a Navigators claim adjuster regarding the status of the arbitrations against Nichols and Kongsberg. Plaintiffs once again sought Navigators' contribution toward plaintiffs' past repair costs, legal fees, and related costs incurred to pursue a recovery from Nichols and Kongsberg.

35. When plaintiffs received no substantive response to their May 20, 2025 correspondence to Navigators, they sent an August 5, 2025 letter to Navigators that repeated their call for Navigators to accept coverage and contribute toward plaintiffs' repair, legal, and recovery costs.

36. Navigators offered no substantive response to plaintiffs' August 5, 2025 letter either. So on September 17, 2025 plaintiffs sent a written notice to Navigators under Washington's Insurance Fair Conduct Act ("IFCA").

37. Among other things, plaintiffs' IFCA notice demanded that Navigators:
   a. Accept coverage of all loss and damage to the four tugs; and
   b. Promptly pay plaintiffs' repair costs, less a single retention and a single deductible.

38. To date, Navigators:
   a. Has not provided any written coverage position.
   b. Has not reimbursed any of plaintiffs' past repair costs.
   c. Has not paid any of plaintiffs' legal fees and related costs to pursue recovery from Nichols and Kongsberg.
   d. Has not committed to indemnify any future repairs costs.

Miller Nash LLP
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

39. As a consequence of Navigators' failures, plaintiffs have been compelled to pay all repair and recovery costs without indemnification from Navigators.

40. An insurer has a duty to investigate a claim for coverage. Yet Navigators has conducted no apparent investigation into or analysis regarding plaintiffs' losses and Navigators' corresponding indemnity obligations.

41. All conditions precedent to the filing of this action have occurred, been performed, or been waived.

## Causes of Action

42. Plaintiffs incorporate all previous paragraphs into each count below, and each count incorporates all factual allegations from all other counts.

**Count 1: Breach of Contract**

43. Navigators' conduct as described above constitutes a breach of its insurance contract with plaintiffs including the breach of its duties to investigate and indemnify.

44. Navigators' breach directly and proximately caused damage to plaintiffs in an amount to be proven at trial.

45. The *Olympic Steamship* doctrine entitles plaintiffs to recover the reasonable attorney fees and costs that it has incurred because of Navigators' breach of its obligations under the Policy.

**Count 2: Breach of Common-Law Duty of Good Faith**

46. Navigators owes plaintiffs a duty of good faith and fair dealing.

47. Navigators breached its duty of good faith through several acts and omissions, including but not limited to:

    a. Failing to conduct a reasonable investigation;

      b.    Failing to respond to coverage correspondence and to state its position on coverage;

      c.    Failing to connect the controlling law and policy language to the facts of its insured's loss;

      d.    Failing to put plaintiffs' interests on par with its own; and

      e.    Denying plaintiffs insurance benefits.

48.    Navigators' acts and omissions directly and proximately caused plaintiffs to suffer damages in an amount to be proven at trial. These damages include, but are not limited to, the deprivation of benefits owed to plaintiffs under the Policies, the costs of plaintiffs' investigation into the damage and plaintiffs coverage, and the costs associated with bringing this action for coverage, including court costs and attorney fees.

49.    Navigators' actions and inactions as described herein were unreasonable, frivolous, or unfounded and therefore constitute bad faith. Navigators' bad faith directly and proximately caused damage to plaintiffs in an amount to be proven at trial.

**Count 3: Violation of Consumer Protection Act**

50.    Each act and omission by Navigators that is described herein was committed in the course of trade and commerce.

51.    Navigators' acts and omissions as described above violated multiple provisions of WAC Chapter 284-30, including but not limited to WAC 284-30(1), (2), (5), (7), and (13), WAC 284-30-350(1), WAC 284-30-360(3), WAC 284-30-370, and WAC 284-30-380(1). These violations are per se violations of RCW 19.86, Washington's Consumer Protection Act ("CPA").

52.    Navigators' acts and omissions also constitute non-per se violations of the CPA because, as alleged above, such unreasonable acts and omissions were

**Miller Nash LLP**
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

unfair or deceptive, occurred in trade or commerce, and affected Washington's policyholders and the public interest.

53. Such unfair or deceptive acts and omissions directly and proximately caused and continue to cause plaintiffs to suffer damages in an amount to be proven at trial. These damages include, but are not limited to, the deprivation of benefits owed to plaintiffs under the Policies, and the costs associated with bringing this action for coverage, including costs and attorney fees.

54. Plaintiffs are entitled to recover their actual damages, attorney fees, litigation costs, and treble its actual damages up to $25,000, pursuant to RCW 19.86.090.

**Count 4: Violation of the Insurance Fair Conduct Act**

55. Navigators' acts and omissions described herein unreasonably denied policy benefits to plaintiffs, in violation of RCW 48.30.015, the Insurance Fair Conduct Act.

56. Navigators' acts and omissions in violation of RCW 48.30.015 proximately and directly caused and continue to cause plaintiffs to suffer damages in an amount to be proven at trial.

57. Plaintiffs have satisfied all statutory requirements for bringing a claim under IFCA.

58. Plaintiffs are entitled to recover their actual damages, attorney fees, litigation costs, and expert witness fees pursuant to RCW 8.30.015(3), and may be awarded up to three times plaintiffs' actual damages pursuant to RCW 48.30.015(3).

**Prayer for Relief**

Wherefore, plaintiffs request relief as follows:

1. For damages in an amount to be proven at trial, including but not limited to (a) the costs plaintiffs have incurred to date to repair the tugs and ensure

their continued safe operation until a permanent set of repairs could be found, (b) the cost of those permanent repairs, and (c) the legal fees and other arbitration costs plaintiffs incurred to recover those repair costs from Nichols and Kongsberg for the benefit of both plaintiffs and Navigators;

     2.     For an award of attorney fees, expert costs, and other costs incurred in this action;

     3.     For treble damages under the CPA up to the statutory maximum;

     4.     For treble damages under IFCA;

     5.     For prejudgment interest accruing until the date judgment is entered; plus post-judgment interest at the statutory rate;

     6.     For such other and further relief as the Court deems just and equitable.

## Jury Demand

Plaintiffs demand that a jury try all issues so triable.

DATED this 11th day of December, 2025.

*/s/ Donald B. Scaramastra*
Donald B. Scaramastra, WSBA No. 21416
*/s/ Carolyn A. Mount*
Carolyn A. Mount, WSBA No. 55527
MILLER NASH LLP
605 5th Ave S, Ste 900
Seattle, WA 98104
Tel: (206) 777-7530
Fax: (206) 340-9599
donald.scaramastra@millernash.com
carolyn.mount@millernash.com

*Attorneys for Foss Maritime Company, LLC and Northwest Tug Leasing, LLC*

4930-0039-1807.2