UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FOSS MARITIME COMPANY, LLC, a Washington limited liability company; and NORTHWEST TUG LEASING, LLC, a Washington limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>NAVIGATORS INSURANCE COMPANY, a New York insurance company; ZURICH AMERICAN INSURANCE COMPANY, an Illinois insurance company; and ASCOT INSURANCE COMPANY a New York insurance company,<br><br>Defendants. | CASE NO. 2:25-cv-02534-JHC<br><br>ORDER |

## I

## INTRODUCTION

This matter comes before the Court on Defendant Zurich American Insurance Company's motion to dismiss. *See* Dkt. # 13. The Court has considered the materials filed in support of and in opposition to the motion, pertinent portions of the record, and the applicable law. At the heart of this motion lies the issue of whether a carrier may sidestep its typical obligations via a so-called "following clause," a distinct version of similar clauses common in reinsurance. Being

fully advised, for the reasons below, the Court answers that question in the negative and DENIES the motion.

## II

## BACKGROUND

This case concerns a coverage dispute between Plaintiffs Foss Maritime Company and Northwest Tug Leasing and their insurers Defendants Navigators Insurance Company (Navigators), Ascot Insurance Company (Ascot), and Zurich American Insurance Company (Zurich). *See generally* Dkt. # 1.[1]

From 2018 to 2024, Plaintiffs held one-year insurance policies purchased from Defendants, the pertinent ones in effect from 2020 to 2024. *See id.* ¶¶ 10–11. Navigators served as the lead underwriter. *Id.* The policies contain an "Additional Perils" section covering losses from "latent defects," "negligence, incompetence or error of judgment . . . of any person," and "other causes of whatsoever nature." *Id.* ¶¶ 12–14; *see also* Dkt. # 14-1 (2020–21 policy) at 42; Dkt. # 14-2 (2021–22 policy) at 46. The policies also include a "Following Clause" under which Zurich was to make payments on eligible claims "within 30 days after receipt of advice of the basis upon which the leading underwriter paid or agreed to pay its proportion of such loss or claim." *See* Dkt # 14-1 at 12; Dkt. # 14-2 at 12.

In 2020, Plaintiffs received four tugboats from a Washington shipbuilder. *Id.* ¶¶ 16, 19. These tugs had thrusters capable of generating large force. *Id.* ¶ 17. But soon after, the tugs'

---

[1] The factual background derives from Plaintiffs' complaint, Dkt. # 1, which the Court accepts as true on a Rule 12(b)(6) motion to dismiss. *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The Court also considers the policies themselves, which the complaint references and thus incorporates. *See Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663, 665 n.1 (9th Cir. 2009) (when reviewing a motion to dismiss, a "court may consider documents, such as the insurance policies, that are incorporated by reference into the complaint."); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("[t]he doctrine of incorporation by reference may apply, for example, when a plaintiff's claim about insurance coverage is based on the contents of a coverage plan").

thrusters "began to destroy themselves," causing damage to their housing and the ships' hulls. *Id.* ¶ 19. Plaintiffs paid about $2.5 million to repair the tugs and otherwise address the damage, though the underlying problem remained unresolved, necessitating constant new repairs. *Id.* Plaintiffs sought a permanent fix from the shipbuilder and thruster manufacturer, but neither offered a repair proposal satisfactory to Plaintiffs. *Id.* ¶ 22. Plaintiffs then hired independent engineers, who determined the root problem to be design and construction errors by the shipbuilder. *Id.* ¶¶ 23–28. Plaintiffs then initiated separate arbitration proceedings against the shipbuilder and thruster manufacturer, which remain pending as of the filing of the complaint. *Id.* ¶¶ 28–29.

Plaintiffs notified Defendants of coverage claims regarding damage to three of the tugs in January 2021 and to the fourth tug in July 2022. *Id.* ¶ 31. But Defendants never "accepted nor rejected plaintiffs' claim for coverage, nor . . . offered any substantive or written explanation of its coverage position." *Id.* ¶ 33. Plaintiffs say that Defendants never responded to two other communications in May and August 2025, *id.* ¶¶ 34–35, and so they noticed Defendants under Washington's Insurance Fair Conduct Act (IFCA) in September 2025. *Id.* ¶ 36. That notice demanded that Defendants accept coverage of all loss and damage to the four tugs and pay for costs. *Id.* ¶ 37. Plaintiffs say that to date, Defendants have not provided any written coverage position, reimbursed any costs incurred in the repair and the separate actions against the shipbuilder and thruster manufacturer, or committed to indemnify future repair costs. *Id.* ¶ 38.

Plaintiffs sued Defendants in December 2025, asserting claims for breach of contract, breach of common-law duty of good faith, violation of Washington's Consumer Protection Act (CPA; RCW 19.86 *et seq.*), and IFCA (RCW 48.30.015). *See id.* ¶¶ 43–58.

Zurich—separately from the other Defendants—now moves to dismiss the complaint under Federal Rule of Procedure 12(b)(6), contending that it fails to state a claim on which relief

may be granted. *See generally* Dkt. # 13. In the alternative, Zurich requests, under Federal Rule of Procedure 12(e), that Plaintiffs plead a more definite statement. *Id.*

## III

## DISCUSSION

### A. Rule 12 Standards

*Rule 12(b)(6)*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Dismissal is proper only if the plaintiff has not alleged a "cognizable legal theory" or there is an "absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd.*, 416 F.3d at 946. The Court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). But a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

*Rule 12(e)*. Under Rule 12(e), a party may move for a more definite statement with respect to a pleading that is "so vague or ambiguous that the party cannot reasonably prepare a response." The movant must specify "the defects complained of and the details desired." *Id.* In considering Rule 12(e) motions, courts evaluate the complaint based on Federal Rule of Civil

Procedure 8, which requires a complaint to contain: (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought. *Vaughn v. Cohen*, 2025 WL 19854 * 1 (W.D. Wash. Jan. 2, 2025). Motions for a more definite statement "are viewed with disfavor and are rarely granted." *See Adobe Sys. Inc. v. A & S Elecs., Inc.*, 153 F. Supp. 3d 1136, 1147 (N.D. Cal. 2015) (citing *Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 466 (9th Cir.1990) (evaluating Rule 8 requirements)).

B. Rule 12(b)(6) Request

Zurich advances four grounds for dismissal, each based on the central contention that the complaint insufficiently alleges actions or conduct by Zurich itself.

1. Collective allegations

Zurich argues[2] that the complaint's collective attribution of responsibility to all three insurers and the lack of any Zurich-specific allegations is deficient, since Plaintiffs must plead specific factual allegations against it. *See* Dkt. # 13 at 18–20. This argument is not a basis for dismissal because no pleading rule prevents collective grouping of defendants. *See McClain v. PQ Beverly Hills, Inc.*, 2017 WL 1250978, at *5 (C.D. Cal. Jan. 13, 2017) ("the fact that plaintiff alleges his claims against 'defendants' collectively, rather than specifying the actions of each particular defendant, does not—as a matter of law—preclude plaintiff from prevailing" on claims). Complaints require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Rule 8 does not require that a complaint offer unique allegations for each defendant in an action with multiple defendants. To the extent that

[2] Zurich offers this argument last, though it says it is "a threshold matter[.]" Dkt. # 13 at 18.

Zurich means that Plaintiffs have not properly pleaded their specific claims, this order addresses those arguments below.

2. Breach of contract claim

Zurich argues that Plaintiffs fail to state a breach of contract claim because its only obligation under the policies was to pay out on the direction of Navigators, and the complaint makes no allegation that Zurich failed to do so. *Id.* at 10–12.

"To plead a breach of contract claim under Washington law, a plaintiff must allege 'that a valid agreement existed between the parties, the agreement was breached, and the plaintiff was damaged.'" *Univ. Ins., LLC v. Allstate Ins. Co.*, 564 F. Supp. 3d 934, 938 (W.D. Wash. 2021) (citing *Univ. of Wash. v. Gov't Emps. Ins. Co.*, 200 Wash. App. 455, 467 (2017)). Put differently, "[u]nder Washington law, [a] breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *In re Amazon Prime Video Litig.*, 765 F. Supp. 3d 1165, 1169 (W.D. Wash. 2025) (citation modified) (evaluating motion to dismiss); *see also Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 78 Wash. App. 707, 712 (1995) (same). Thus, to show a breach, a plaintiff must allege how the defendant "fail[ed] to comply with a specific term" in the contract. *Poulsbo Grp., LLC v. Talon Dev., LLC*, 155 Wash. App. 339, 347 (2010) (citation omitted).

The policies here evince contracts between Plaintiffs and Zurich. *See* Dkt. # 14-1 at 199–200 (2020–21 signature page identifying Zurich); Dkt. # 14-2 at 205 (same, 2021–22). Zurich is also identified as the "Insurer" in a schedule attached to the policy. Dkt. # 14-1 at 192 (providing that Zurich will underwrite 2.5% of the 2020–21 policy); Dkt. # 14-2 at 197 (same, 2021–22). Zurich points to the policies' Following Clause, which provides that

> All underwriters participating hereon agree to follow **Navigators Insurance Company** as Leader absolutely with respect to any decisions, agreements, payments, settlements, claims, surveys legal proceedings, guarantees, towage,

> salvage, payments on account and claims settlements, and shall make payment therefore as depicted in the Loss Payable Clause within 30 days after receipt of advice of the basis upon which the leading underwriter paid or agreed to pay its proportion of such loss or claim.

Dkt. # 14-1 at 12; *see also* Dkt. # 14-2 at 12 (same, 2021–22). Zurich says that this provision imposes only a single obligation on it: to make payment within 30 days of Navigators' direction to do so. Plaintiffs counter that Zurich's obligations are more general, and that as a subscribing underwriter, its obligation to provide coverage was independent of, but identical to, Navigators' obligation, which is why the complaint refers to all three underwriters together. Plaintiffs point to the preambular paragraph in the policies' Section I, which provides,

> By this Policy of Insurance, **the Subscribers hereto**, hereinafter referred to as the Underwriters, **each severally**, but not jointly, and on the part of one for the other or any of the others, **do make insurance and cause to be insured**, for the amounts set opposite their respective names, lost or not lost, the Assured for loss or liability in respect of the Tugs, Barges or other Vessels, Equipment and property scheduled or otherwise included hereunder, subject to the conditions, warranties and other terms of the policy, including any endorsements now or hereafter attached to any part hereof.

Dkt. # 14-1 at 18 (emphasis added); Dkt. # 14-2 at 19 (same, 2021–22). Thus, they argue, the allegations against Navigators and Zurich for breaching the policies are identical, because both insurers failed to provide coverage as alleged in the complaint.

While neither side presents a case on all fours with this situation, the Court believes that Plaintiffs proffer the better interpretation of the policies' language. First, nothing in the Following Clause prevents Zurich from taking a position on coverage or investigating Plaintiffs' claims. While it does obligate Zurich to adopt Navigators' position, this is not the same as a *prohibition* on investigation or taking a position with respect to coverage, at least until Navigators arrives at a conclusion. While the Following Clause provides that Navigator's notice to Zurich is a condition precedent to Zurich's paying out on coverage to Plaintiffs, no other condition precedent forecloses Zurich's ability to investigate Plaintiffs' claims or take other

action in line with the policies. The policies do not say, for example, that Zurich will take no action at all with respect to any claim unless directed to do so by Navigators. Further, Zurich's reading elevates the Following Clause over the preambular paragraph cited by Plaintiffs, essentially nullifying it. Such a reading is disfavored under principles of contract interpretation in Washington. *See Nishikawa v. U.S. Eagle High, LLC*, 138 Wash. App. 841, 849 (2007) (courts are to "harmonize clauses that seem to conflict" so as "to interpret the agreement in a manner that gives effect to all the contract's provisions.").

Second, under Zurich's reading, Plaintiffs may be unable to recover at all from it. Generally, courts should not construe contracts in such a manner as to "allow one party to breach without consequences," since such a construction is unreasonable. *See Grant Cnty. Port Dist. No. 9 v. Wash. Tire Corp.*, 187 Wash. App. 222, 236 (2015) (citing *City of Tacoma v. City of Bonney Lake*, 173 Wash.2d 584, 593, 269 P.3d 1017 (2012)). Here, if Plaintiffs are successful in their suit, they will have a right to damages from (at least) Navigators. But an award of damages is not the same as a payment under the Following Clause, and any such damages award to Plaintiff would not necessarily trigger the coverage obligation applicable to Zurich in that clause. The policies state that each underwriting insurer is "not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations." Dkt. # 14-1 at 14; Dkt. # 14-2 at 14 (same). Nor is it clear that Plaintiffs could receive equitable relief ordering Zurich to pay its share of coverage per the Following Clause. For example, there is no "follow the fortunes" clause, more common in reinsurance scenarios, whereby Zurich would have to pay Plaintiffs if Navigators is found liable here. *See Am. Bankers Ins. Co. of Fla. v. Nw. Nat. Ins. Co.*, 198 F.3d 1332, 1335 (11th Cir. 1999) (a "follow the fortunes" clause "usually states that when an insurer loses to—or settles with—the insured, the reinsurer must 'follow the

fortunes' of the ceding company and pay on its reinsurance obligations."). Zurich, in any event, is not a reinsurer but a primary insurer of Plaintiffs.

Third, the Following Clause bears some similarity to "follow form" clauses used by secondary and excess insurers or reinsurers. Such clauses generally mean that the secondary insurer covers the same risks, and therefore assumes the same obligations, under the primary policy. *See, e.g.*, *Milgard Mfg., Inc. v. Liberty Mut. Ins. Co.*, 107 F. Supp. 3d 1171, 1178 (W.D. Wash. 2015), *order amended on reconsideration*, 2015 WL 4898902 (W.D. Wash. Aug. 17, 2015) (describing that a "follow form" policy incorporates the "terms, conditions, and exclusions of the underlying policy") (citation omitted). At least one decision from this District assumed—if not affirmatively decided—that the obligations in an insurance policy applied equally to the lead and following insurers. *See Thomas Miller Specialty Offshore v. Electron Hydro, LLC*, 2025 WL 1346257, at *1 n.1 (W.D. Wash. May 8, 2025) ("[t]he Court's references to [the plaintiff's] obligations under the Policy include the other subscribing underwriters' obligations under the Policy as well.").

Insurance purchased from Lloyd's of London provides another illustrative example to this regard: Each individual Lloyd's policy is underwritten by "syndicates," or groups of underwriters, with the "day-to-day affairs of each syndicate [] conducted by an underwriter who has the authority to act for and bind the syndicate." *Prof'l Marine Co. v. Those Certain Underwriters at Lloyd's*, 118 Wash. App. 694, 703 n.25, 77 P.3d 658 (2003) (citation modified). Each syndicate member, though they may play a backseat role, owes contractual duties to the policyholder. *See Certain Underwriters at Lloyd's of London Syndicates v. Travelers Indem. Co.*, 2006 WL 1896341, at *1 (W.D. Wash. July 7, 2006); *ChaChaLounge LLC v. Certain Underwriters at Lloyd's London*, 2022 WL 1165038, at *1 (W.D. Wash. Apr. 20, 2022) (Lloyd's syndicate members are "severally, but not jointly, liable to the insured for their proportion of the

underwritten risk.") (citation modified); *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 864 (5th Cir. 2003) (each Lloyd's policy is a "collection of many bilateral contracts running between the insured and each" underwriter); *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1092 (11th Cir. 2010) ("each underwriter has an independent stake in the insurance contract that stands apart from the liabilities of the other underwriters of the contract."). Accordingly, the Court will not dismiss Plaintiffs' contract claim against Zurich.

3. Non-contract claims

Zurich also argues that Plaintiffs' three non-contract claims (bad faith, CPA, and IFCA) fail. Its contentions track its argument with respect to the contract issue above. For similar reasons, these claims will not be dismissed either.

*Bad faith claim.* Claims of insurer bad faith "are analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty. To establish bad faith, an insured is required to show the breach was unreasonable, frivolous, or unfounded." *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wash.2d 122, 196 P.3d 664 (2008). "Whether an insurer acted in bad faith is a question of fact." *Smith v. Safeco Ins. Co.*, 150 Wash. 2d 478, 484, 78 P.3d 1274 (2003) (citation omitted).

Zurich's main argument, as above, is that it owed only one duty to Plaintiffs that it did not breach. Dkt. # 14–15. But RCW 48.01.030 obligates every insurer to "act in good faith," and the de facto denial of coverage benefits without investigating or providing a coverage position raises the question of bad faith. *See Newmont USA Ltd. v. Am. Home Assur. Co.*, 795 F. Supp. 2d 1150, 1177–78 (E.D. Wash. 2011) (suggesting that an insurer's failure to articulate a coverage position could substantiate a bad faith claim, though finding that the plaintiffs had not proven their case). Zurich's argument essentially elevates the Following Clause over these statutorily imposed obligations. Neither the Following Clause nor any other provision

apparently prevents Zurich from investigating Plaintiffs' claims. "An insurer may commit bad faith by failing to adequately investigate a claim." *Jha v. Chi. Title Ins. Co.*, 2024 WL 3598747, at *5 (W.D. Wash. July 31, 2024) (citing *Coventry Assocs. v. Am. States Ins. Co.*, 136 Wash. 2d 269, 279, 961 P.2d 933 (1998)). And an "insurer's duty of good faith is separate from its duty to indemnify if coverage exists." *Coventry Assocs.*, 136 Wash. 2d at 269.

*CPA claim.* Because an insurer's breach of the duty of good faith is a per se violation of the CPA, Plaintiffs have also properly pleaded a claim under that statute. *See Moratti ex rel. Tarutis v. Farmers Ins. Co. of Wash.*, 162 Wash. App. 495, 511 (2011) (citing *Gingrich v. Unigard Sec. Ins. Co.*, 57 Wash. App. 424, 433–34, 788 P.2d 1096 (1990)). Since Plaintiffs' CPA claim is a single claim, the Court need not evaluate Zurich's argument that Plaintiff's non-per se claims fail.[3] In any event, the complaint properly pleads non-per se claims arising from Zurich's failure to investigate Plaintiffs' claims. *See* Dkt. # 1 ¶¶ 30–35, 39–40, 50, 52–53 (describing Defendants' acts and omissions, pleading CPA claim).

*IFCA claim.* IFCA permits any "first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer [to] bring an action . . . to recover the actual damages sustained." RCW 49.30.015(1). Zurich again argues that the claim fails because the complaint alleges nothing done by it.[4] *Id.* at 18. But an unreasonable denial of benefits through a failure to investigate can support an IFCA claim. *See Gamble v. State Farm Mut. Auto. Ins. Co.*, 2020 WL 6286816, at *4 (W.D. Wash. Oct. 27, 2020)

---

[3] To establish a claim for violation of the CPA, a plaintiff must prove: (1) unfair or deceptive acts; (2) occurring in trade or commerce; (3) which impacts the public interest; and (4) causes (5) injury to the plaintiff's business or property. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 785, 719 P.2d 531 (1986). A plaintiff must allege each element. *Id.* at 792.

[4] On reply, Zurich argues that Plaintiffs' IFCA notice was deficient because it was not addressed to it. Dkt. # 33 at 8. This argument will be disregarded since it was advanced for the first time on reply. In any event, the notice is addressed to Zurich and the other insurers. *See* Dkt. # 27-5 at 2 (listing "Zurich American Ins. Co.").

(citing *Coventry Assocs.*, 136 Wash. 2d at 279). And the complaint makes allegations advancing such a claim. *See* Dkt. # 1 ¶¶ 30–40, 55–56. Again, the Following Clause overrides neither RCW 38.01.030's command that insurers have a duty to act in good faith nor RCW 49.30.015(1)'s grant of a cause of action to claimants possibly harmed by insurers' failure to act reasonably or in good faith.

C. More Definite Statement

In the alternative, Zurich requests that the Court order Plaintiffs to plead a more definite statement. Such relief is warranted when a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). But it is disfavored and rarely granted. *See Dobson v. Int'l All. of Theatrical Stage Emps.*, 2025 WL 3251158, at *2 (W.D. Wash. Nov. 21, 2025) (citation omitted). Here, the Court does not find that the complaint is vague or ambiguous, and it fairly puts Zurich on notice of the claims against it. Rather, Zurich's argument reflects its position that the policies absolved it of any obligations to Plaintiffs, suggesting that any complaint would be ambiguous if it did not refer to the one obligation Zurich says it had. In any event, the complaint permits Zurich to "reasonably prepare a response." Fed. R. Civ. P. 12(e). Thus, the Court denies Zurich's motion for a more definite statement.

## IV

## CONCLUSION

For the reasons above, the Court DENIES Zurich's motion.

Dated this 11th day of August, 2026.

John H. Chun

John H. Chun
United States District Judge