UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FOSS MARITIME COMPANY LLC, a Washington limited liability company, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>NAVIGATORS INSURANCE COMPANY, a New York insurance company, ET AL.,<br><br>Defendants. | CASE NO. 2:25-cv-02534-JHC<br><br>ORDER |

## I

## INTRODUCTION

This matter comes before the court on Defendant Navigators Insurance Company's Motion to Enforce Arbitration Provision. Dkt. # 45. The Court has considered the motion, the materials filed regarding the motion, the rest of the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the motion.

## II

## BACKGROUND

This case concerns an insurance dispute between Plaintiffs Foss Maritime Company and Northwest Tug Leasing and their insurers Defendants Navigators Insurance Company, Ascot Insurance Company, and Zurich American Insurance Company. *See generally* Dkt. # 1. Plaintiffs are maritime transportation companies owned by Saltchuck Marine Services, LLC. Dkt. # 27 at 1. Underlying the insurance dispute is Plaintiffs' claim that four of their tugs suffered damage to their propulsion systems. Dkt. # 1 at 2.

### A. The Policies

From 2018 to 2024, Plaintiffs held one-year insurance policies (the Policies) purchased from Defendants. *Id.* at 2; *see* Dkt. # 27-1.[1] Navigators served as the lead underwriter. Dkt. # 27 at 2. Plaintiffs used Aon Commercial Risk Solutions as an insurance broker and agent for insurance claims. Dkt. # 47 at 3.

Several coverage clauses in the Policies are relevant here. First is an "Additional Perils" clause covering losses from "latent defects," "negligence, incompetence or error of judgment . . . of any person," and "other causes of whatsoever nature." Dkt. # 27-1 at 46. Next is a "Liner Negligence" clause, which covers losses caused by "[n]egligence, error of judgment or incompetence of any person," but excludes "the cost of repairing, replacing or renewing any part condemned solely as a result of a latent defect, wear and tear, gradual deterioration or fault or error in design or construction." *Id.* at 50-51.

[1] While this citation references only a copy of one of the Policies, no party contends that the relevant language differed between the Policies.

The Policies also have a deductible and Self-Insured Retention (SIR) clause, which states that Navigators is "warranted free from any claim of whatsoever nature unless the total claim amount exceeds the . . . base deductible as stated in the policy and the sum of . . . $500,000." *Id.* at 8. Plaintiff's deductible under the Policies is $75,000 "arising out of each separate accident." *Id.* at 45. But "in the event of a claim involving two or more vessels of the [insured's] fleet it is agreed to apply one deductible." *Id.*

Finally, the Policies contain an arbitration clause: "Except as otherwise specifically or mutually agreed, in case of dispute arising out of the construction, interpretation or validity of this policy whether arising before or after its termination each party shall appoint one Arbitrator within one month of being notified." *Id.* at 10. The clause states that "arbitration hereunder shall be a condition precedent to the commencement of any action at law." *Id.*

B. The Damaged Tugboats & Insurance Dispute

In 2020 and 2021, Plaintiffs received four tugboats from a Washington shipbuilder. Dkt. # 27 at 2. Soon after purchase, the tugboats' thrusters "began to destroy themselves," causing damage to their housing and the ships' hulls. *Id.* Plaintiffs state that the resulting repairs cost $2,501,853.60 as of December 2025. *Id.* And fixing the root cause of the damage to prevent additional repairs, which would require installation of new thrusters, is expected to cost about $12 million. *Id.* at 3.

On January 21, 2022, after Plaintiffs discovered the defects in three of the tugboats, they provided Aon notice of claims for those tugboats.[2] Dkt. # 27-2 at 4. Four days later, Aon emailed Navigators "loss notices" for the three tugboats. *Id.* at 3. Aon said that based on port engineer's estimates, reserves for each tugboat were set at $700,000 and stated that "a surveyor

[2] This email came from Plaintiffs' parent company Saltchuck.

will shortly be instructed and we will provide further details and copies of the survey reports when available." *Id.*

On March 18, 2022, Navigators replied to Aon, asking for "further details regarding surveyor retention and any claims being made against the manufacturer and/or supplier of any defective thrusters, gears or other parts." *Id.* at 2. Navigators stated it would "[s]tand by for further updates regarding any claim(s) that might arise" and that "[a]fter the initial review of the claim information you have submitted, or even after additional investigation, we may advise you of Policy terms and conditions which may apply to this claim." *Id.* Navigators acknowledged receipt of the claim under a reservation of rights. *Id.*

On July 28, 2022, Aon emailed Navigators about manufacturing defects in a fourth tugboat. Dkt. # 27-3 at 3-4. Aon asked for acknowledgment of receipt and the claim's file number, which Navigators provided. *Id.* at 2-3. Navigators said it would stand by for updates on the claims and their estimated application to the SIR amounts. *Id.* at 2.

On January 20, 2023, Aon told Navigators it had "not really had too much in the way of reporting" from the surveyors for three of the tugboats, and it had seen "no costings nor anything from the appointed surveyor to confirm that he agrees that all three vessels[] have suffered from the same incident or occurrence." Dkt. # 42-3 at 2. However, Aon asked if, hypothetically, the three tugboats at issue were damaged due to the same incident or occurrence, whether they would be treated as separate claims or the same claim for the purposes of calculating the SIR and deductibles under the Policies. *Id.* at 2-3.

About a month later, on February 27, 2023, Navigators told Aon that it "does not see an interpretation that leads to the respective failures in service of these three vessels as being considered a single claim event." Dkt. # 42-4 at 3. Aon responded, stating that it believed there

was a common cause for the defects, so losses associated with the three tugboats should be one claim. *Id.* at 2. Additionally, Aon said that it anticipated "that over the coming months we will receive the survey reports for each tug and the said reports should provide the [surveyor's] conclusions regarding causation, the repair works undertaken and costings." *Id.* Aon suggested that the parties "circle back around regarding causation and the application of the deductible, in accordance with the policy terms, when maybe we are in the position to review all the reports. In summary and for present purposes we would like to keep the review of this claim as an open matter with further technical information to be provided for review in due course." *Id.* at 2-3. Navigators told Aon that it "agree[d] that it makes sense to keep this open for further review pending receipt of technical information regarding the respective failures in service." *Id.* at 2.

On September 26, 2023, Aon emailed Navigators, stating that based on preliminary surveyor reports and a report from engineers, the tugboats had the wrong model of thruster. Dkt. # 42-5 at 6. Aon said that "[o]n this basis, it seems clear that a claim arises on the policy for the cost of repairing the damage." *Id.* Aon contended that under these circumstances and applicable law, a single deductible should apply to all four tugboats. *Id.* at 6-7. Two days later, Navigators stated that it would research and review to provide its position on the deductible issue. *Id.* at 5.

On October 10, 2023, Aon emailed Navigators asking for an update. *Id.* Two days later, Navigators stated that it did not view the "respective failures in service of these three vessels as being considered a single claim event." *Id.* at 2. Navigators also stated that it needed "further clarity on the number of vessels and scope of costs that we can anticipate will be presented. We are currently on notice of three (3) potential claims for the vessels captioned above and we have simply been advised by Aon that reserves have been set at $700,000 for each vessel based on the port engineer's estimates." *Id.* Navigators then quoted from an engineering report, indicating

that it received this report. *Id.* at 2-3. Navigators cited the Liner Negligence clause—which excludes coverage for "the cost of repairing, replacing or renewing any part condemned solely as a result of a latent defect, wear and tear, gradual deterioration or fault or error in design or construction"—and questioned to what extent the $700,000 estimates for each of the tugboats included those excluded costs. *Id.* at 3-4. Navigators also noted that it had not received preliminary reports from surveyors. *Id.*

Over the next several years, Plaintiffs participated in settlement proceedings with third parties and Navigators regarding the tugboats. Dkt. ## 42-6, 42-7, 42-8, 42-9. Navigators was amenable to the two proposed settlements that Plaintiffs presented, but both settlements fell through. *See id.*; Dkt. # 42 at 3.

On September 17, 2025, Foss notified Navigators of its intent to bring claims under the Washington Insurance Fair Conduct Act (IFCA) for Navigators' alleged failure to acknowledge its duty to indemnify the tugboat claims, failure to provide its coverage position, and refusal to pay the claims. Dkt. # 27-5; *see* RCW 48.30.015(8)(a).

C. Procedural History

On December 11, 2025, Plaintiffs filed the current suit, bringing claims against Navigators for breach of contract, breach of common law good faith, violations of the Washington Consumer Protection Act (WCPA), and IFCA violations. Dkt. # 1.[3] Plaintiffs argue that Navigators acted unlawfully by not providing a written coverage position, failing to investigate Plaintiffs' claims, and not reimbursing Plaintiffs for the repair costs associated with the tugboats. Dkt. # 1 at 10-11.

[3] Navigators states that after Plaintiffs sued, they provided many documents purporting to support their tugboat claims. Dkt. # 42 at 2-3.

Navigators answered the complaint, including several affirmative defenses. Dkt. # 12 (January 26, 2026). Navigators also stipulated to several motions to extend case deadlines and provided Federal Rules of Civil Procedure 26(a) initial disclosures. Dkt. ## 20 (February 13, 2026), 22 (February 26, 2026), 25 (March 20, 2026), 31 (March 26, 2026), 34 (April 3, 2026), 36 (April 8, 2026), 51-4 (initial disclosures). On March 20, 2026, Foss moved for partial summary judgment against Navigators. Dkt. # 26. Before responding to the summary judgment motion, Navigators participated in a Rule 26(f) status conference and signed a joint status report. Dkt. # 51 at 2 (status conference on March 25, 2026), 38 (joint status report on April 8, 2026). In the joint status report, Navigators said that Plaintiffs' legal claims were premature because the parties had not arbitrated the dispute. Dkt. # 38 at 2. Navigators then responded to Plaintiffs' summary judgment motion on April 24, 2026, asserting that Plaintiffs' claims should go to arbitration subject to the Policies' arbitration clause. Dkt. # 41. Navigators also filed the present motion to enforce the arbitration provision in the Policies or stay arbitration pending further discovery on choice-of-law. Dkt. # 45.

## III

## DISCUSSION

### A. Waiver

Plaintiffs argue that Navigators waived its right to compel arbitration by participating in litigation without raising the issue sooner. Dkt. # 50 at 2.

To establish that Navigators waived its arbitration rights, Plaintiffs must show that Navigators (1) knew that it had an existing right to compel arbitration, and (2) took intentional acts inconsistent with that existing right. *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023). It is undisputed that Navigators knew it had the right to compel arbitration

under the Policies' arbitration clause. The Court thus proceeds to assess whether Navigators took intentional acts inconsistent with that right.

When determining whether parties waived arbitration, courts in the Ninth Circuit view the totality of the parties' actions, asking whether "those actions holistically indicate a conscious decision to seek judicial judgment on the merits of the arbitrable claims, which would be inconsistent with a right to arbitrate." *Id.* (citation modified). "[A] party generally 'acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court.'" *Id.* (quoting *Newirth ex rel. Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 941 (9th Cir. 2019), *abrogated on other grounds by Morgan v. Sundance, Inc.*, 596 U.S. 411, 417-19 (2022)). "[A] party's extended silence and delay in moving for arbitration may indicate a conscious decision to continue to seek judicial judgment on the merits of the arbitrable claims, which would be inconsistent with a right to arbitrate." *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016) (citation modified). "Obviously, '[s]eeking a decision on the merits of a key issue in a case indicates an intentional and strategic decision to take advantage of the judicial forum.'" *Armstrong*, 59 F.4th at 1015 (quoting *Newirth*, 931 F.3d at 941).

First, Plaintiffs cite Navigators' failure to raise arbitration as an affirmative defense as conduct inconsistent with the right to compel arbitration. Dkt. # 50 at 10. But in the Ninth Circuit, defendants need not raise affirmative defenses in their initial pleadings; they can "raise an affirmative defense for the first time in a motion for judgment on the pleadings or summary judgment as long as the delay does not prejudice the plaintiff." *Evitt v. Experian Info. Sols. Inc.*, 2024 WL 1513614, at *5 (W.D. Wash. Apr. 8, 2024), *motion for relief from judgment denied*,

2024 WL 3226803 (W.D. Wash. June 28, 2024). Plaintiffs do not argue that they were prejudiced by Navigators' failure to raise arbitration as an affirmative defense in its answer. Accordingly, they have not shown that Navigators waived its right to compel arbitration based on this omission.

Plaintiffs also argue that Navigators' answer, Rule 26(a) initial disclosures, stipulated motions to extend case deadlines, and participation in the parties' Rule 26(f) conference without raising arbitration indicate "a conscious decision to seek judicial judgment on the merits of the arbitrable claims, which would be inconsistent with a right to arbitrate."[4] *Armstrong*, 59 F.4th at 1015 (citation modified); Dkt. # 50 at 10-11. Plaintiffs cite several cases to support their claim that Navigators' participation in this litigation constitutes waiver of the right to compel arbitration. *See* Dkt. # 50 at 10. But in each of these cases, the party seeking arbitration moved for a decision on the merits. *See FBC Mortg., LLC v. Skarg*, 699 F. Supp. 3d 837, 843 (N.D. Cal. 2023) (finding that defendants waived arbitration where they waited eight months to compel arbitration and moved to dismiss two of plaintiff's claims on the merits); *Banq, Inc. v. Purcell*, 2024 WL 4164126, at *1-2 (9th Cir. Sept. 12, 2024) (finding waiver of arbitration where there was a five-month delay for seeking arbitration and defendants participated in discovery proceedings and moved to dismiss on the merits); *Kelly v. Pub. Util. Dist. No. 2 of Grant Cnty.*, 552 F. App'x 663, 664 (9th Cir. 2014) (finding that defendants waived arbitration where they waited eleven months to compel arbitration, conducted discovery, and moved to dismiss).

---

[4] Plaintiffs also cite Navigators' substantive response to their motion for partial summary judgment. Dkt. # 50 at 11. But Navigators' response states several times that Plaintiffs' summary judgment motion should not be considered because their claims are subject to arbitration under the Policies. *See* Dkt. # 41. Accordingly, the Court finds that the response does not constitute intentional conduct inconsistent with the right to compel arbitration.

Here, Navigators has not participated in litigation on the merits of Plaintiffs' claims. It has only answered the complaint, stipulated to motions for extensions, provided initial disclosures, and participated in a joint discovery conference. None of these actions "indicate a conscious decision to seek judicial judgment on the merits of the arbitrable claims, which would be inconsistent with a right to arbitrate." *Armstrong*, 59 F.4th at 1015 (citation modified); *see Evitt*, 2024 WL 1513614, at *6 (finding no arbitration waiver despite almost a year delay where defendant's participation in the litigation was "limited to answering the complaint, serving initial disclosures, participating in a joint status report, engaging in settlement talks, and stipulating to certain motions—routine matters that do not rise to the level of actively litigating the merits of a case"); *Topolewski v. Experian Data Corp*, 2024 WL 337173, at *2 (C.D. Cal. Jan. 26, 2024) (finding that where over six months defendant had only stipulated to extend deadlines, filed a notice of interested parties, answered the complaint, and joined in a Rule 26(f) report, its actions were not "suggestive of an intentional decision not to compel arbitration"). Accordingly, the Court finds that Navigators has not waived its right to compel arbitration in this matter.

B. Arbitrability of Plaintiffs' Claims

Plaintiffs also argue that their claims in this suit are not subject to arbitration under the Policies' arbitration clause. Dkt. # 50 at 2. Specifically, Plaintiffs contend that their claims fall outside the scope of the arbitration clause because they do not involve the "construction" or "interpretation" of the policy, but rather turn on the application of plain and unambiguous policy language to the facts. *Id.*

1. Application of Federal Law

As an initial matter, Plaintiffs argue that there is no established federal maritime law controlling its extracontractual claims based in allegations of bad faith, so state law applies. Dkt.

# 50 at 17. A marine insurance policy is a maritime contract covered under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq*. *Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1057 (9th Cir. 2018). And the Ninth Circuit has stated that "[f]ederal substantive law governs the scope of an arbitration agreement" under the FAA. *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1058-59 (9th Cir. 2020); *see also Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 921 (9th Cir. 2011) ("[C]ourts should apply federal arbitrability law absent clear and unmistakable evidence that the parties agreed to apply non-federal arbitrability law." (citation modified)). The parties do not dispute that the Policies are subject to the FAA. Accordingly, the Court applies federal law to assess whether Plaintiffs' extracontractual claims are within the scope of the arbitration clause in the Policies.

2. Scope of Arbitration Clause

Plaintiffs primarily contend that because the arbitration clause is limited to disputes involving the "construction, interpretation[,] or validity" of the Policies, where the Policies' language is plain and unambiguous, claims regarding the application of that language to facts are not arbitrable. Dkt. # 50 at 12-14.

There is an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 631 (1985). Accordingly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 626 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). But the Supreme Court recently clarified that "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan*, 142 U.S. at 418. Rather, the presumption in favor of arbitration policy "is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to

enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Id.* (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302 (2010)). To decide whether a dispute must be arbitrated, the Court looks "first to the content of the arbitration clause." *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1101 (9th Cir. 2023).

Here, Plaintiffs bring a breach of contract claim against Navigators for failure to accept coverage and pay damages related to the tugboats. *See* Dkt. # 1 at 11. Plaintiffs argue that because the Policies' language regarding coverage is "clear and unambiguous," and "has only one reasonable meaning," application of the facts to this language does not involve interpretation of the Policies. Dkt. # 50 at 15. Plaintiffs say that Navigators has identified no policy language that would allow it to avoid coverage. *Id.*

But in emails starting as early as January 2023, Aon (acting as Plaintiffs' agent) and Navigators discussed their disagreement about how to calculate the SIR and deductible for the tugboats under the Policies, an issue that affects whether Navigators was required to provide coverage. *See* Dkt. # 42-3 at 2-3; Dkt. # 42-4 at 2-3; Dkt. # 42-5 at 2, 7. And in October 2023, Navigators noted a potential dispute over whether and to what extent it was obligated to provide coverage for repairs or replacement of the defective thrusters under the exclusion in the Liner Negligence clause of the Policies. Dkt. # 42-5 at 4. Navigators contends that Plaintiffs' breach of contract claim regards coverage under the Policies—including proper application of the SIR and deductibles and exclusions under the Liner Negligence clause—which requires interpretation of the Policies. Dkt. # 41 at 10-11. The Court agrees that resolution of Plaintiffs' breach of contract claim requires interpretation of the Policies to answer questions about coverage. Accordingly, Plaintiffs' breach of contract claim falls within the scope of the arbitration clause.

Plaintiffs also argue that their extracontractual breach of good faith, WCPA, and IFCA claims solely regard Navigators' failure to provide a coverage position and are independent of any interpretation of the Policies. Dkt. # 50 at 17. But Navigators' alleged failure to provide a coverage position is inextricably linked to the question of whether it was required to provide coverage. In fact, Navigators states that it did give Plaintiffs a reasonable coverage position considering the parties' unresolved dispute in the record over the SIR and deductible clauses. Dkt. # 52 at 5. Accordingly, these claims are also subject to arbitration under the Policies.

This conclusion tracks other courts' determinations regarding the scope of similar arbitration clauses. *See Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236, 1256 (S.D. Cal. 2000) (concluding that bad faith and torts claims regarding failure to defend under insurance policies implicated interpretation of the policies because they either explicitly referenced interpretation of the policies or "implicitly charge[d]" that defendants did not perform their obligations "in light of the coverage provided to plaintiffs" in the policies); *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) (concluding that claims for breach of contract and breach of fiduciary duty created by the contract clearly fell within the scope of an arbitration clause covering disputes "relating to the interpretation and performance of the contract itself"); *Maeda Pac. Corp. v. GMP Hawaii, Inc.*, 2011 WL 3476609, at *5 (D. Guam Aug. 2, 2011) (concluding that an insured's bad faith claims were arbitrable because if the insurer was correct that conditions precedent of the policy were not satisfied, then the insurer "could not have acted in bad faith in denying [the insured] coverage under the [p]olicy"); *Cheeseburger Restaurants, Inc. v. Lexington Ins. Co.*, 2008 WL 11339606, at *4 (C.D. Cal. Aug. 13, 2008) (concluding that an insured's bad faith claim, which included allegations of failure to investigate, was arbitrable because it required interpretation of the insurance policy); *cf.*

*Washburn v. Societe Commerciale de Reassurance*, 831 F.2d 149, 151 (7th Cir. 1987) (concluding RICO claims were not arbitrable because they did not "involve a controversy arising under the agreement itself," but instead a conspiracy in which the conspirators used the reinsurance agreement, among several other agreements and devices, to drive plaintiff "further into insolvency and defraud entitles and individuals").

3. Other Arguments

Plaintiffs additionally contend that a provision of the arbitration clause in the Policies requiring the arbitrators to be non-lawyers and "commercial people in the Marine insurance industry," demonstrates that the parties did not intend to arbitrate disputes requiring "adjudication of coverage claims involving rules of legal procedure, evidentiary submission, and a final award akin to a legal judgment." Dkt. # 50 at 14; *see* Dkt. # 27-1 at 10. And the arbitration clause describes arbitration as a "condition precedent" to any "action at law" with no indication that the arbitration will be final and binding on the parties. Dkt. # 27-1 at 10. Plaintiffs thus contend that the arbitration clause "can therefore only be read as intending that the parties resolve any substantive disagreements about the 'interpretation' or 'construction' of the policy at arbitration, ***then*** go to court to resolve disputes about ***application*** of the policy language to the facts and determining the extent of the insured's damages." Dkt. # 50 at 15. But, as described above, the Court finds that Plaintiffs' claims do involve interpretation of the Policies. The Court also concludes that the only reasonable reading of the arbitration clause is that full arbitration is required under these circumstances.

Plaintiffs also argue that arbitrability of their claims is undermined by the language in the arbitration clause stating that arbitration is a "condition precedent" to an "action at law," without any indication that the arbitration is final and binding on the parties. Dkt. # 50 at 15 (citing

*Madrid v. Concho Elementary Sch. Dist. No. 6 of Apache Cnty.*, 2009 WL 1159165, at *2 (D. Ariz. Apr. 29, 2009)). But this argument goes to the *enforceability* of any arbitration outcome, not the arbitrability of Plaintiffs' claims, which is what is at issue here.

Finally, Plaintiffs argue that their extracontractual claims are not arbitrable because there is no federal maritime rule covering insurance bad faith claims, so the FAA is inapplicable to those claims. Dkt. # 50 at 2, 16. But what matters here is whether the *arbitration clause* in the Policies is covered by the FAA, which Plaintiffs do not contest. Accordingly, disputes falling under that clause are arbitrable.

## IV

## CONCLUSION

For the reasons above, the Court GRANTS Defendant Navigators' motion to enforce arbitration (Dkt. # 45) and STAYS Plaintiffs' claims against Navigators pending such arbitration. The Court DIRECTS the Clerk to strike as moot the motion for partial summary judgment at Dkt. # 26.

DATED this 16th day of November, 2026.

John H. Chun
United States District Judge